My name is Helen Sklar. I represent Asylum Martinez. The central questions in this case are whether the presentation of a fictional story to the asylum office, standing alone, is a sufficient basis for an adverse credibility finding, and whether the immigration judge's credibility finding is supported by specific cogent reasons as required by the law of the circuit. This is a preliminary matter. Are we reviewing the BIA's decision or the IJ's decision? Your Honor, I believe that you're reviewing the IJ's decision. Now, why would that be when the BIA did not say it adopted it, and although it said we agree, which appellate courts often say, it also makes its own independent finding we are not persuaded by the Respondent's explanations for the discrepancy. Your Honor, one answer to that is that the Board did not do a de novo review. But isn't that grounds for granting the petition? Well, that it didn't give any reasons. It did. How do you know it didn't do a de novo review? That's only based on the lack of any indication in the decision that it was a de novo review. It seems to be – in truth, it seems to be neither, de novo review or – Well, it's unclear. Pardon? It's unclear. Right. But the BIA did. It is unclear, absolutely. Right. You could argue it one way or the other. Why wouldn't we just – since they didn't enter the language that I think they did in a leia lua, where they say we adopt the IJ's decision, just treat it as a BIA decision like any other. They say – what they say is the IJ denied the application on the basis of an adverse credibility finding. The IJ noted that the claim before the asylum officer was inconsistent with the one he pursued at the hearing. We are not persuaded by the Respondent's explanation for the discrepancy. What that means to me is the IJ says I don't believe him because he told two different stories. On appeal, he provides an explanation for why he told different stories. The BIA evaluates the explanation for why he told different stories and says we are not persuaded by it. To me, that means that the BIA went through an intellectual process different from the IJ's and at the end of the day concluded we agree with the IJ. So it seems like just an ordinary BIA decision that we review as a BIA decision. Your Honor, I would agree with that. And under those – under that analysis, you would review the Board's decision. Now, on the review of the Board's decision, I can see where it could go either way in this case. You could believe the man and think, gee, he gave a pretty good reason why he lied to the asylum officer. Or you could disbelieve him. And it seems to me if you can go either way on it, then the substantial evidence standard is met under Elias Zacharias and we have to defer to the Board. What am I missing there? Well, I would take issue with the characterization that one could go either way. Okay, I guess that's it. You have to. Yes, and I do believe that the explanation he gave contains the elements of stigmatization and shame and fear. He says I made up the whole student leader story, the business about how I was a student leader and I was afraid the regime would persecute me because of my politics. I admit I made it all up because I was covering up the fact that I was gay. How do we know he's not making up that he's gay? Maybe he's straight. Maybe this is like back in the late 60s, early 70s, when people used to talk about kissing the doctor at the draft board physical in order to pretend to be gay, in order to avoid the draft. How do I know the guy is gay? Your Honor, I believe that the judge and the government certainly make statements in both the decision and in the government's brief that accept his sexual orientation, his homosexual orientation. It seems to me that what the BIA says is we just don't think he's credible. So you don't have to pick out this and that and say we believe this, but we're not sure of that. He's just not credible. Well, I think the standard being one that requires specific, cogent reasons. Well, the reason is that he totally made up the story about being a student leader and admits it. Well, the decision isn't that specific, actually. However, given that there are compelling reasons for making up a story and he presented them and he did a very, very good job, I believe, of explaining, that situation would merit an analysis pinpointing specifically what it was about the testimony and his explanation. I hope it's such a good job. He says the reason I lied and told this phony story about being a student leader was that I was – I didn't know that I could get asylum if I was gay and I didn't want to admit that I was gay because I might be persecuted. Well, it seems to me that that kind of motivation would equally justify in the person who made that statement's mind lying because I know that being gay and coming from a country that doesn't tolerate gay people will get me asylum. Well, I don't think it's clear in the record, Your Honor, once again, that the judge disputed his homosexuality. He presented very – Maybe he's homosexual, but he never got beaten up by the police. He made up the student leader story. Maybe he made up the getting beaten up by the police story. Who knows? But, you see, that's the crux of it. It's not – because the specific and cogent reasons for the credibility finding weren't provided, as they must be under many cases, Akinmadi, the cases that we've cited in our brief. It is a case that requires that the adjudicator specify what the reasons for the finding are because without that specificity, there's no way of knowing what in particular they're referring to. One of the standard instructions we give a jury at a jury trial is falsus in unum, falsus in omnium. If a witness is false in one thing, you may disbelieve everything that witness says, but you don't have to. It's up to you. That's basically the falsus in unum, falsus in omnium instruction we give juries. Why isn't the BIA entitled to the same mode of judgment? Well, what the Ninth Circuit has said about that, I believe, is that because the history of asylum adjudication has seen conjecture and surmise creep into the rationale that is given by adjudicators in the immigration context, things that have no basis in the record, things that have no nexus to the credibility finding. You know, as you stated at the beginning of the argument, there are very, very compelling reasons that a person would conceal his homosexuality if he felt that it would result in his deportation to a country where he would be severely punished for it. It's an utterly rational thing to do. He filled out the application within three months of arriving in this country. He went to the asylum interview, unrepresented by counsel, with no translator. At that point in time, the damage had been done. I mean, one could very reasonably look at his thinking at that point in time and conclude that what could he do? He had already included in the application the fact that he was a student leader, et cetera, the fiction that he was a student leader. So the government encourages people to come forward quickly and make themselves known quickly and not remain in the shadows, which he did. However, he wasn't equipped to properly represent his own interests and made an egregious mistake. And we might not even like him for his decision to do that, which clearly by the judge's very language did not. The judge's findings are mixed up with language that relate to a discretionary determination. The judge talks about how he's a person who's not of good moral character and about how a person shouldn't be able to just come to this country and make up any old thing they want. I mean, this type of language made clear that the judge wasn't engaging in a detached, you know, sort of objective analysis about the reasonableness of what he was doing. I thought the good moral character reference meant I think if a person lies on his asylum application, the dishonesty is a mark of poor character. I thought that's what the I.J. was saying. Well, and we all may agree on that, but does that mean that he's lying about his homosexuality and about what took place in Guatemala? I mean, I think the question is, is he lying about his sexual orientation and about what happened to him in Guatemala? And, you know, he may be a liar and he may still be telling the truth about everything he testified to at the hearing, and the fact that he was willing to lie in the first instance because, you know, perhaps he didn't know what else to do. I read the I.J.'s decision actually slightly differently. It seemed to me the I.J. accepted the story that he was actually a homosexual and had been subject to abuse for that reason, but didn't seem to think there was anything wrong with tweeting someone who was homosexual in a disparaging way. In fact, he actually made a remark that I found, frankly, appalling in an immigration judge's decision. He said, although homosexuals can be a social group, social groups would not normally be considered to apply to persons whose only common characteristic is that they have transgressed the rules of conduct of a given society. And I think the Supreme Court just this year in Lawrence v. Texas said, no, that's why we have to strike down these laws against sodomy, because they cast a stigma against segments of our society that the I.J. in this case has replete throughout his opinion, which is why I asked you at the outset, am I supposed to be reviewing this opinion or the BIA, because actually the case gets easier if I'm reviewing I.J.'s. And I think the fact that that's not clear is another reason that the case is properly remanded, because the board did not specify what standard of review it was using. And the board gave no reasons for rejecting the explanations. There were explanations offered in the brief, and the board gave absolutely no reasons, so maybe it ought to be granted for that reason. Anyway, you are over your time, but Judge Polk, have you said anything? I just want to make sure I'm clear. If we get to reviewing the I.J.'s decision, I want to know how you distinguish the Sobolos-Leina cases that say when an applicant is lying about a matter of critical concern to his application, that that will support negative credibility finding. And what I think I hear you saying is that the I.J. inserted so many immaterial considerations wrapped around some reference to his original student activist lie, that that somehow contaminates the I.J.'s negative credibility determination. Is that what I'm getting? Yes, that's one element, Your Honor. I also believe that to the extent the initial story was provided as a way of self as a manner of self-protection, as something done out of ignorance and whatever other adjective a person might want to put on it, it was not done because the person intended to be deceitful or to get away with something. It was done for self-protection. And if one looks at it from that vantage point, then, you know, it takes the moral sort of culpability out of it. And I don't understand personally how the analysis could be devoid of an understanding of that as the motivation. And how does he, how do you try to slot his student activist claim into that category of our, of the jurisprudence? I don't, because it doesn't sound incidental to me. Well, you could say, I suppose that one analysis is that it wasn't, it's incidental in the sense that it had nothing to do with anything. I mean, it's central in the sense that it was bad and it. It had nothing to do with the truth anyway. It would get him asylum if it was true, but it had nothing to do with the truth. You say it had nothing to do with anything in response to Judge Pope, but it does have something to do with anything. It's a solid asylum claim if it's true. Well, I think the cases that Your Honor is referring to deal with the question of whether or not a person tells a lie about something that is not really central to the claim, but it doesn't involve an entirely different claim. It involves something that doesn't really undercut the claim. Right. I hear it saying, as a practical matter, we know that people are in difficult circumstances when they're trying to get out of a country where they feel threatened, and so there may be incidental lies that are told, and that's just part of our business here, and we're going to acknowledge that. But I don't think that quite reaches this guy's student activism claim, does it? I think what I'm trying to say is that perhaps there is an entirely different analysis that is called for here, and perhaps the cases that you're referring to and that look at the proximity of the lie to the center of the claim don't necessarily provide the entire analysis needed to just What's the analysis that's needed here? How do you look at his student activist claim? I think the analysis needed here is whether or not the explanation he gave for what he did was reasonable. And if it was reasonable, it should be accepted. I mean, there are examples throughout history of people that told all kinds of lies to get out of very dangerous situations, and I believe the jurisprudence of immigration law does recognize that there's a distinction between lies that deal with a person in flight versus lies that relate to a person who has essentially found a safe harbor. I think there's some problem with that distinction, but we're not dealing with that here. I do believe that in his telling the lie, he believed, because of the historical hostility of immigration law toward homosexuals, that he believed he was in imminent danger. And for, frankly, the government to take the position that homosexuality is somehow, you know, not something that a person would necessarily feel so endangered by is not in, it's inconsistent with the facts that, you know, are part of almost common knowledge, and I think the Supreme Court decision that Your Honor referred to is an indication of that. Thank you very much. May it please the Court, my name is Jeffrey Bernstein and I represent Mr. Ashcroft. I suppose I ought to get to the question of whether or not it's the BIA or IJ's decision. It's pretty clear from reading the BIA decision that the BIA did not incorporate, excuse me, the BIA did not adopt the decision of the immigration judge. I think what really happened here was that the BIA kind of incorporated the reason, it did not adopt the reasoning, but it essentially incorporated the reason to explain the conclusions which are. Why isn't Judge Kleinfeld right? Because it does seem to make sense that the IJ, and the way this reads, the IJ says that he noted that the claim, the IJ noted that the claim we saw and presented was inconsistent. And then it goes on to say obviously there was an appeal to the BIA, so there's, the appeal would have reasons explaining the discrepancy, and then it says we're not persuaded, so isn't that what we should look at? Well, I'm not sure I understand the question, Your Honor, and to be honest with you, I haven't. It's like a new decision, it's not just saying the IJ wasn't persuaded, it's saying we're not persuaded. You assume involves some intellectual thought. There's no question, Your Honor, that the BIA did make the findings that it set out and believed those findings. The BIA? The BIA's findings were accurate. The BIA set out a reason for its decision. What was the reason for, what's the, looking at the BIA opinion, what is the reason it sets out for why it is not persuaded by the Respondent's explanations for the discrepancy? Well, they don't, well, they simply say that they are not persuaded by the Respondent's explanations for the discrepancy. They refer to the immigration judge. They don't say anything after that. They don't say anything about, there's not, tell me in, where is their language in the BIA decision that says why the BIA was not persuaded? I think, and if, well. Because the next reference when they say we agree is talking about the conclusion. It's not saying specific cogent reasons for why the discrepancy, I mean, they should be talking about the U.N. advisory opinion, the testimony of Murray. I don't think they should be talking about the testimony of Murray. Well, wouldn't they say we reject this? Or the advisory opinion with respect to the credibility. Wait, why wouldn't they say we reject this? That, which is what happened, was the, the. Maybe I'm not understanding, Your Honor. Are we talking about the credibility? Can I finish my question and maybe you'll understand my question? My question is, the petitioner brought forth to the BIA, can you hear me? Is that a problem hearing or is it a problem? I'm having a hard time. Okay, sorry. I'll try to speak louder. The, the petitioner brought forth all these documents and the U.N. advisory committee and the newspaper articles and testimony of a psychiatrist that set forth, you know, a reasonable and perhaps persuasive explanation for why, when he initially came to this country, he just didn't volunteer, and by the way, I'm a homosexual and that's why I'm here. And so he said all those things and I guess what I would expect from the BIA is to say, okay, he says this was why he didn't tell the truth at the beginning and here's another reason why. And, you know, it's well known that especially Latinos have an issue with disclosing homosexuality, but we don't believe that that's why this petitioner lied the first time he came in contact with the immigration officer in this case because, I mean, shouldn't there be some statement? I'm sorry, Your Honor. Okay, don't tell me what they essentially did. Tell me where the statement is. Well, I'm telling you, and you may not buy this, Your Honor, but what my view is, what the government's view is that, well, let me just say two things. Number one, the BIA doesn't have to write an exegesis on. No, it has to give specific cogent reasons that are legitimate for the rejection of the testimony. And it did. It said that he lied under oath twice and that. The BIA said that? Well, they didn't say twice. They said the immigration judge denied the respondent's asylum claim on the basis of an adverse credibility finding. The immigration judge noted that the claim the respondent presented before the asylum officer was inconsistent with the one he pursued at the hearing, and what that means, obviously, is that evidence showed that he lied under oath twice. Okay, well, if that's the reason, and that seems to be the only reason you're able to offer, that the BIA offered in this decision, then isn't that inconsistent with our law that says you have to look further, that just nearly making an inconsistent statement, you have to – it's not sufficient alone. You have to look at the reasons the statement was made, the context the statement was made. You have to look at other factors of believability. Your Honor, I don't believe that your – the Court's jurisprudence says that. I think the Court's jurisprudence says that if you've got a significant discrepancy between the asylum application and a later testimony, then that is sufficient to sustain a credibility determination. Actually, are you familiar with – I don't know if I'm going to pronounce this right – Paramasamy v. Ashcroft? I know it's a decision, Your Honor. I haven't read it in preparation for this case. I have cited three cases in my brief which stand for the proposition, I believe, that I've just read. Well, this is a Ninth Circuit 2002 case that forgave a misrepresentation where the petitioner failed to disclose that she had been sexually assaulted because of the opprobrium and stigma of being sexually assaulted. Completely different from the situation where he lied. He didn't leave out a component of asylum claim. No, he did lie. There's no question about that the first – but don't we have to look at what were the reasons for that lie? Not under the – not under the jurisprudence of this Court. Again, the cases which we've cited in our brief stand for the proposition where there is a material discrepancy between an asylum application and a subsequent testimony, that is sufficient to sustain a credibility determination. That is – that is a sufficient articulation to sustain a credibility determination. That's what happened here. In fact, it was even worse here. He lied under oath twice. It's more than a significant and material discrepancy. He lied. He made up an entire story. And as Judge Kleinfeld noted, that does not provide the adjudicator with confidence that anything he said he testified to was correct. But I.J. did seem to believe him. But believe the second story. No, I think that the Board of Immigration Appeals judge, one of the concurring Board of Immigration Appeals judge – Well, I know what the concurrence said. It said he believes the story, but he doesn't think it's sufficient. But I'm telling you that the I.J.'s comments seem to say that he believed the second story. I – Your Honor, he may well have. I don't recall that that was the case. I think the way he put it was on page 88, line 5 or 6, even assuming there is some truth. Right. He was simply – he wasn't saying that he believed him. He was saying, you know, he's not credible. I don't believe anything he said. But even assuming he is, he doesn't make out a case for asylum. And in the government's view, that's – that was correct as well. And I'm happy to discuss that as well, if the Court wishes. But as Judge Kleinfeld indicated, he lied. He lied under oath twice. No judge – very few judges are going to believe anything an individual says after they lie under oath twice. They have to come up with a pretty gosh-darn good story and excuse. And Mr. Martinez did not, as the Board also found. I want to kind of point out also in this regard that Mr. Martinez did not come forward in his direct testimony to indicate that his new story was different from his old story. Didn't at all come forward. It wasn't until he was on cross-examination when the INS attorney said, well, didn't you lie under oath twice? And he said, yes, I did. Well, obviously. I mean, you know, that's his trial tactics. He came forward to put in this new and different claim. He had to have known he'd put in a prior different claim. Just because his lawyer didn't choose to elicit an undirect doesn't make any difference. Well, I think it indicates a propensity for dishonesty, to be quite honest with you, Your Honor. And, again, there were cogent reasons for the rejection of the excuse given. I mean, first of all, the case law of the circuit provides that it's not an answer to a greater credibility determination to say that I lied because I'm afraid of the government. This Court has held that that is not the case, and that is essentially what Mr. Martinez was saying here. Moreover, as the immigration judge identified, there are a plethora of reasons not to believe. He gave two reasons. Yes. He gave two reasons. He said one was incoherent. Excuse me, Your Honor. One was incoherent. The only reason that he gave that wasn't incoherent was that the first application wasn't truthful. The immigration judge. Well, anyway, I don't need to talk. Your time's up. All right, Your Honor. Unless you have something you want to add, or they have other questions. Well, if I can just sum up. The credibility determination was proper. It should be affirmed, and that should dispose of it. However, if the Court determines that the credibility determination wasn't proper, the alternative findings should be sustained. There is absolutely no evidence establishing that Mr. Martinez was a member of a social group. The only evidence is Dr. Murray's report, and his report is a non-scientific report. It's based on events that happened in the late 70s. It is full of assertions which don't seem to have basis in fact, other than his own speculation. It is not based on example. He makes the incredible assertion that many, many policemen in Guatemala at the time, I suppose, were predators. There is not one speck of evidence to support that other than his own speculation. He didn't speak to any policemen. He didn't speak to any government officials. The only people he spoke to were people who hung out in a gay disco and in a park where gays gathered in the late 70s. Actually, he said the mid-70s to the late 70s. So Judge, excuse me, Dr. Murray's opinion was properly given absolutely no weight by the immigration judge. There's the report of Heather McClure, whose report is similarly flawed, and she does not indicate that a social group of effeminate men and that effeminate men is the group that Dr. Murray identified. She doesn't indicate there's a group of effeminate men who constitute a social group. Counsel, I don't know if we even get there, do we, if it's a credibility issue? I don't think so, Your Honor. I was just saying that if. I mean, we can just assume for purposes of decision that Guatemala society persecutes gays. I don't think you can. I don't think there's any evidence that that is the case. Well, wouldn't you prevail under your theory even if we do? Well, obviously, we would prevail if. Look, what I'm getting at is I was I was thinking your theory was the BIA rejected the asylum claim because nothing that Martinez says is credible on account of us having lied under oath twice. Period. End of story. And now you're going off on this riff about how there's not an adequate foundation to show that homosexuals as a group are persecuted in Guatemala. And I'm thinking, why? Why? What do we care? The credibility is the only reason in the BIA decision. So it seems like credibility is what we decide. Why in the world would we get into deciding whether Guatemala is decent to homosexuals? Your Honor, if I may, I'm defending the board's decision. The board made two findings, two alternative findings. The board said, number one, he's not credible, so we can't we can't find that he's entitled to asylum. They said even assuming, I think it's their second paragraph, even assuming that he were credible, there's no basis or substance to his asylum claim. He hasn't been persecuted. Of course, that paragraph of the BIA's decision is blatantly wrong because it assumes that homosexuals can't be a particular social group. Oh, he does not, Your Honor. The immigration judge did make that mistake. Well, actually, he didn't. He kind of he said that they can't be a social group. Oh, I see. So you're saying even if I lose on the first reason the BIA gave, I can win on the second reason. Yeah. I'm saying we do win. Okay. I don't see how you can win on that. But given the language that the BIA used, isn't it blatantly incorrect that you can't you can't prevail in an immigration claim on the grounds that you have been discriminated against because of your homosexuality? The BIA didn't say that. How do you read that paragraph? He said I believe and let me let me read the paragraph again. We agree with immigration that the respondent failed to establish past persecution or a well-founded fear on one of the five protected statutory grounds. They didn't say that it wasn't possible to prove out a social group claim based on a subset of homosexuality or even homosexuality. They've already in a published decision said that. That's what I thought. So they wouldn't say that. And that is not what this sentence means. They're saying based on their essentially their independence determination, there is no claim in the circumstance of this case. Mr. Martinez did not make out a social group claim. That's what they're saying. That's what I hear them saying. Wow. Sorry. Only because that's actually the case. I mean, homosexuality is not a I mean, this Court hasn't held that homosexuality is a social group 100 percent of the time. In Montiel, which is really the only decision of this case, they said that Mexican gays who acted as women, who apparently believed they were women or played the roles of women, can is a social group for purposes of asylum. This Court hasn't held that homosexual homosexuals in general are a social group. Counsel, we've Thank you, Your Honor. Obviously, there's been some interest on the bench in this case, and both sides exceeded their times by a considerable amount. I apologize. Martinez v. INS is submitted.
judges: Kleinfeld, Wardlaw, Pogue